UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

ERIE INSURANCE PROPERTY &
CASUALTY COMPANY,

      Plaintiff,

v.                                                  CIVIL ACTION NO. 5:18-cv-01226

MIRRAGE ENTERPRISES, LLC,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      Pending is Plaintiff Erie Insurance Property & Casualty Company's ("Erie's") motion for summary judgment [Doc. 116].

**I.**

      This declaratory action concerns the enforceability of Defendant Mirrage Enterprises, LLC's ("Mirrage's") policy with Erie with respect to a January 8, 2018, water loss suffered at a motel at 300 Odd Road in Ghent, West Virginia (the "Motel"). Erie contends that a series of misrepresentations and an omission by Mirrage discharge Erie of its obligations under the policy pursuant to West Virginia Code § 33-6-7.

      Mirrage applied for the instant policy with Erie on or about May 27, 2017 (the "Application"). Rodney Allen filled out the Application on behalf of Mirrage following several telephone conversations with its owner, Mysoon Mortada. It is undisputed that the Application -- signed by Ms. Mortada and certified by her as accurate -- contains several falsehoods:

- The Application indicates that Mirrage is the owner of the Motel when, in fact, Mirrage leased the building.

- The Application states that Mirrage had never had a previous policy cancelled for any reason when, in fact, Mirrage had a previous policy cancelled just a few months prior for nonpayment of premiums.

- The Application reflects that there had been no prior losses when, in fact, the Motel had suffered two losses in the past year.

The parties offer conflicting testimony regarding the source of these falsehoods. Mr. Allen testifies, generally, that he relied upon the information provided to him over the phone by Ms. Mortada when he filled out the Application on Mirrage's behalf. Mr. Allen also testifies, however, that Ms. Mortada informed him of at least one loss that was not ultimately reflected on the Application [*Compare* Doc. 117-26 at 53-54 *with* Doc. 117-28]. Ms. Mortada conflictingly testifies that she informed Mr. Allen that Mirrage did not own the Motel, of the prior water losses, and of previous policy cancellations.

In addition to the Application's inaccuracies, the May 27, 2017, Application contains no reference to the inspections and actions taken by West Virginia State Fire Marshal in the preceding months. After receiving a life safety complaint, the Fire Marshal inspected the Motel on nineteen (19) occasions from April 2016, to April 2017. The inspections revealed that the Motel did not have a certificate of occupancy during this time period, and further revealed persistent problems with the alarm and sprinkler systems being either in a "trouble" state or shut off entirely. Specifically, in the months preceding the Application, the Fire Marshal discovered the sprinkler system turned off and the fire alarm system silenced and in "trouble" mode on three separate occasions.

On April 11, 2017, the Fire Marshal entered an order (the "Closure Order") pursuant to West Virginia Code § 29-3-14 (2016).[1] The Closure Order concluded that the Motel "constitutes a fire hazard and is dangerous to the safety of persons and property" and directed that the owner take corrective action within thirty (30) days or cease and desist using the property for commercial occupancy [Doc. 117-23]. There is no record evidence that Ms. Mortada (or anyone on Mirrage's behalf) informed Mr. Allen (or anyone on Erie's behalf) of the Closure Order in the Application dated May 27, 2017. In later visits, the Fire Marshal noted the conditions identified in the Closure Order had not been remedied, but also noted the presence of paying guests at the Motel [Doc. 117-21], although Ms. Mortada offers conflicting testimony.

## II.

Federal Rule of Civil Procedure 56 provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)).

---

[1] The statute confers upon the Fire Marshal authority to "make reasonable orders in writing . . . for . . . the remedying of any conditions found to be in violation of a regulation . . . or to be dangerous to the safety of persons or property." W. Va. Code § 29-3-14 (2016). The West Virginia Legislature has since reorganized the Code to transfer the Fire Marshal to the Department of Military Affairs and Public Safety. *See* S.B. 586, W. Va. Leg. (effective May 28, 2020). The Fire Marshal's statutory authority is now found at West Virginia Code § 15A-10-9(b) (2020).

The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation marks omitted); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see also Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

### III.

Erie focuses its argument upon a West Virginia Code § 33-6-7, which states as follows:

> All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of facts, and incorrect statements shall not prevent a recovery under the policy unless:
>
> (a)  Fraudulent; or
> (b)  Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or
> (c)  The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise.

For an insurer to prevail under subsection (a), it "must establish the insured's specific intent to deceive the insurer." *Mass. Mut. Life Ins. Co. v. Thompson*, 194 W. Va. 473, 478, 460 S.E.2d 719, 724 (1995). In subsections (b) and (c), however, the "focus shift[s] . . . to the

4

impact the misrepresentation [or omission] would have on the insurer's business judgment utilized in issuing the policy." *Id.* The insurer need not "prove a causal connection between the facts misrepresented, omitted, concealed, or incorrect on an insurance application and the [loss]." *Id.* at 481, 460 S.E.2d at 727. Rather, the insurer "must show that the misrepresentation, omission, concealment of fact, or incorrect statement substantially affected or impaired its ability to make a reasonable decision to assume the risk of coverage." *Id.* The statute "adopts the test of whether a reasonably prudent insurer would consider the [omission] material to the contract." *Powell v. Time Ins. Co.*, 181 W. Va. 289, 297, 382 S.E.2d 342, 350 (1989). Put another way, an omission is material if "the insurer in good faith would either not have issued the policy, or would not have issued the policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known." *Id.*

However, "[i]f the facts regarding the risk are correctly stated to the agent of an insurance company, but erroneously inserted by him in the application, the company is chargeable with his error or mistake." Syl. Pt. 1, *McDonald v. Beneficial Standard Life Ins. Co.*, 160 W. Va. 396, 396, 235 S.E.2d 367, 367 (1977). If there is "conflicting testimony presented concerning the source of the misrepresentation on [Plaintiff's] application," the matter is "correctly submitted to the jury for resolution." *Jarvis v. Modern Woodmen of America*, 185 W. Va. 305, 310, 406 S.E.2d 736, 741 (1991).

## IV.

Erie contends it is entitled to summary judgment given three misrepresentations, and an omission, on the Application. The parties dispute the source of the misrepresentations. Specifically, witnesses offer conflicting testimony as to whether Ms. Mortada informed Mr. Allen

of the ownership of the Motel, prior cancellations of insurance policies, and prior losses. The law provides that an insurance company is chargeable with the mistakes of an agent and that conflicting testimony concerning the source of a misrepresentation is a matter properly submitted to the jury for resolution. *See Jarvis*, 185 W. Va. at 310, 406 S.E.2d at 741. The Court detects a genuine issue of material fact with respect to the source of the falsehoods ultimately reflected in the Application.

There is no record evidence, however, that Mirrage informed Erie of the existence of the Fire Marshal's Closure Order. Rather, Mirrage identifies the deposition testimony of Mr. Sam Bidawid, principal of Mirrage's lessor, SB Hotels, LLC, as evidence that the Fire Marshal had not required the Motel to cease commercial operations at the time of the Application [*See* Doc. 120-1 at 22 ("[W]e were never told by the Fire Marshal, 'you cannot have people in here' [until December of 2017]")]. On April 11, 2017, the Fire Marshal served the Closure Order on the owner of the Motel (KAB Hospitality, LLC) rather than Mirrage. Further, Fire Marshal Bobby Palmer testifies that Ms. Mortada "indicated to [him] that she was not receiving [the Fire Marshal's reports]" [Doc. 120-2 at 24]. Ms. Mortada's deposition testimony reveals that, at some undetermined point in time, she was aware of the Closure Order [Doc. 117-34 at 85]. But at summary judgment, the Court "cannot weigh the evidence or make credibility determinations." *Jacobs*, 780 F.3d at 569. Rather, it must view the evidence in the light most favorable to the nonmoving party. *See id.* For these reasons, the Court concludes a genuine issue of material fact remains with respect to the omission of the Closure Order.

### V.

Based upon the foregoing discussion, Erie's motion for summary judgment **[Doc. 116]** is **DENIED**.

The Clerk is directed to send a copy of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTERED: September 14, 2020

Frank W. Volk
United States District Judge